ESTHER MIEHER, as Admr. of the Estate of KATHRYN MIEHER, deceased, Plaintiff-Appellant, *v.* KENNETH L. BROWN *et al.,* Defendant-Appellee.

(No. 69-162;

Fifth District—February 1, 1972.

Phelps, Russell, and Kasten, of Carlinville, (Carl E. Kasten, of counsel,) for appellant.

Hoagland, Maucker, Bernard & Almeter, of Alton, (Robert B. Maucker, of counsel,) for appellee.

804

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Plaintiff-Appellant Esther Mieher, Administrator of the Estate of the Estate of Kathryn Mieher, Deceased, appeals from a judgment order of the Circuit Court of Montgomery County, dismissing Counts III and IV of her Complaint against Defendant-Appellee International Harvester Company, a Delaware Corporation.

Count III is a wrongful death action; Count IV is for funeral and hospital expenses, and the allegations of the two counts are identical except as to the damages claimed. Hereinafter, reference to the "Complaint" is to Counts III and IV aforesaid.

The Complaint alleges that on February 4, 1967, plaintiff's intestate was driving a 1964 Oldsmobile on a two-lane paved highway known as Illinois Route 140 near Old Ripley, Illinois; that the decedent was in the exercise of due care and caution for her own safety. Further allegations of the Complaint are as follows:

5.

That while plaintiff's decedent was driving said automobile, the driver of a milk truck—Kenneth L. Brown—drove his truck in such a manner that plaintiff's motor vehicle collided with the motor vehicle owned and operated by said Brown.

6.

That the collision occurred during the course of an attempted right turn by said Brown, and that the vehicle of the plaintiff's decedent ultimately contacted the right rear portion of the truck and that the truck bed or frame penetrated the windshield of the vehicle of plaintiff's deceased.

8.

That the defendant was and is a designer and manufacturer of "IHC" trucks of various sizes and models, including the 1967 International Loadstar Series.

9.

That the defendant manufactured a 1967 International Loadstar (Model 1600) truck, serial number 416060H658250 and through its dealer, who is not known by the plaintiff at this time, sold said truck to said Brown in November, 1966, when they knew or should have known that said truck would be used in the stream of commerce upon the public highways.

10.

That the defendant, International Harvester Company, prior to such sale had negligently designed said truck in such a manner that it was

dangerously defective in that the aforesaid truck did not have thereto attached a reasonably safe rear bumper, fender or other similar shield.

11.

That the defendant, International Harvester Company, by its agents, employees and dealers, then and there knew or in the exercise of ordinary care should have known that said truck, in the absence of such bumper, fender or shield was defective, faulty and unsafe and that the vehicle of the plaintiff's deceased or any other person using the public highways might collide with the right rear portion of said truck and that the vehicle would, in the absence of such a bumper, fender or shield be allowed to procede unimpeded under that portion of said truck and that the plaintiff's deceased or any other person driving off the public highways might or would be seriously injured or killed by the truck bed's penetration of their windshields.

12.

That as a direct and proximate result of the forementioned collision between the vehicle of the plaintiff's deceased and the aforesaid negligently designed truck, the plaintiff's deceased sustained injuries both internally and externally of which she died on February 4, 1967.

Plaintiff's brief states that the issue is whether the Complaint "properly states a cause of action on negligent design products liability theory * * *", and defendant's brief says that "the action against International Harvester is based on strict liability in tort for alleged defective design of a truck * * *". During oral arguments both plaintiff and defendant stated that the cause had been considered by them as one predicated upon the theory of strict liability in tort.

■■■ This admixture of language and theory is a difficult premise from which to work. It would unduly prolong this opinion to review the elements of a cause of action in strict liability in tort, as laid down in the case law in Illinois commencing with *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612, 210 N.E.2d 182, and proceeding through *Williams v. Brown Manufacturing Co.* (1970), 45 Ill.2d 418, 261 N.E.2d 305. To put the matter bluntly, there is no cause of action in this state for strict liability in tort for negligent design. There are several theories upon which an injured plaintiff may proceed when the condition of a product is the alleged factor of proximate cause. One of these involves the traditional concept of negligence, another sounds in strict liability in tort, another sounds in breach of warranty, express or implied. These are separate and distinct causes of action and the pleading and proof requirements for each are different.

■■ The complaint in question is, despite the language in the briefs

and statements of counsel made during oral argument, an effort to state a cause of action for negligent design. It does not state a cause of action for strict liability in tort. There is, for example, no allegation that the truck in question was in the same condition when it left the possession of the defendant manufacturer as it was at the time of the accident which caused decedent's death. There is an allegation that the vehicle was a "negligently designed truck", and that defendant "knew or in the exercise of ordinary care should have known that said truck * * * was defective * * *". As the Court said in *Suvada*, "to require proof that Bendix was actively *negligent*, would be the antithesis of strict liability." (32 Ill.2d 612, 624, 210 N.E.2d 182, 189 (1965).) Emphasis added. We therefore treat the complaint for what it plainly is, a cause of action for negligent design of the truck.

■■ Plaintiff urges that the manufacturer of a motor vehicle owes a duty to a nonuser to exercise ordinary care in design, and is liable for injuries proximately caused by the failure to use such care, even though the design defect is not the proximate cause of the initial collision. It should also be noted that plaintiff does not allege that Brown was negligent in his operation of the truck.

Defendant's position is that there can be no recovery when the design is not the proximate cause of the collision which ultimately resulted in decedent's injuries (*i.e.*, the so-called "second collision theory"), since this would be tantamount to requiring it to produce a "crash proof car." Defendant further contends that a manufacturer is not liable to a nonuser of its product under these circumstances.

In support of the position that a manufacturer owes a duty to the nonuser, or innocent bystander, whose injury results from a condition of the product, plaintiff cites *Suvada v. White Motor Co., supra.*

It will be recalled that *Suvada* and his partner, owned the truck involved in that case and that they had purchased the truck from White Motor Company who had installed a brake system purchased from Bendix. The brake system failed and the truck struck a bus causing damage to the bus and personal injuries to passengers in the bus. Suvada settled the claims of the passengers who were certainly nonusers of the brake system manufactured by Bendix. The *Suvada* Court said, "Plaintiffs alleged that they were compelled to make the settlements. This negatives any question that they acted as volunteers." (32 Ill.2d 612, 624, 210 N.E.2d 182, 188 (1965).) A reading of Suvada impels the conclusion that the passengers would have had a direct action against Bendix, and to this extent, *Suvada* does support plaintiff's position. (Plaintiff also cites *Wright v. Massey-Harris, Inc.* (1966), 68 Ill.App.2d 70, 215 N.E.2d

465.) This case does not support the proposition for which it is cited by plaintiff, because in *Wright* the plaintiff sued the manufacturer for personal injuries sustained while he was operating a self-propelled corn picker. In other words, the plaintiff in *Wright* was a user of the product in question.

Plaintiff also cites in support of the nonuser theory *Elmore v. American Motors Corp.* (Cal.S.Ct., 1969), 451 P.2d 84, which case is also cited by defendant.

In *Elmore*, a 1962 Rambler manufactured by defendant allegedly was delivered with foreign matter in its gear box and a faulty drive shaft. While the car was being driven it went out of control and injured the plaintiff Elmore, the driver, and also struck the car of another plaintiff, Anna May Waters. Obviously Anna May Waters was a nonuser of the product. The *Elmore* Court cited *Piercefield v. Remington Arms Co.* (Mich. S.Ct., 1965), 133 N.W.2d 129, in holding that a bystander or "nonuser" of a product should not be denied recovery simply because of that status. The Court said that the "liability has been based upon the existence of a defective product which caused injury to a human being * * *." and observed that in prior cases it had used language "applicable to human beings generally." *Elmore v. American Motors Corp.* (Cal. S.Ct., 1969), 451 P.2d 84, 88—89.

In 2 Harper & James, *The Law of Torts* (1956), p. 1572 n.6, the authors note that "injury to a bystander is often a perfectly foreseeable risk of the makers enterprise and that the consideration for imposing liability on the maker without regard to fault does not stop with those who undertake to use the chattel. A restriction on recovery by bystanders is only the distorted shadow of a vanishing privity which is itself a reflection of the habit of viewing the problem as a commercial one between traders, rather than as a part of the accident problem." Furthermore, the *Elmore* court declared in rather forceful language that

"If anything, bystanders should be entitled to greater protection than the consumer or user where injury to bystanders from the defect is reasonably foreseeable. Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, where as the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made * * * to extend greater liability in favor of the bystanders,"

and went on to hold that "the doctrine of strict liability in tort is

available in an action for personal injuries by a bystander against the manufacturer and the retailer." *Elmore v. American Motors Corp.* (Cal. S.Ct., 1969), 451 P.2d 84, 89.

The plaintiff in *Piercefield v. Remington Arms Co.* (Mich. S.Ct., 1965), 133 N.W.2d, 129, been injured by a shell manufactured by the defendant. The shell had been purchased by the plaintiff's brother and was being used by the brother at the time the injury occurred. A suit for damages filed against the defendant for breach of implied warranty had been dismissed at the trial level. On appeal, the Supreme Court of Michigan reversed and held that the defendant manufacturer did owe a duty to the plaintiff even though he was only a bystander.[1]

Although there are no Illinois cases that have squarely dealt with this issue, it was recently considered by the Federal District Court for the Eastern District of Illinois in *White v. Jeffrey Galion, Inc.* (1971), 326 F.Supp. 751. After surveying the various Illinois decisions in the area of

---

[1] The doctrine of strict liability in tort first appeared in the Restatement of the Law (Torts) in 1965, as section 402A. *Restatement (Second) of Torts* section 402A. In a *caveat,* however, the authors of the Restatement declined to express an opinion whether the doctrine applied to harm to persons other than users or consumers of the product. The comment to this caveat indicated that as of 1965 no court had applied the doctrine to bystanders or to anyone other than a user or consumer, and went on to note that "casual bystanders, and others who may come in contact with the product, as in the case of employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile, have been denied recovery. There may be no essential reason why such plaintiffs should not be brought within the scope of the protection afforded, other than that they do not have the same reasons for expecting such protection as the consumer who buys a marketed product; but the social pressure which as been largely responsible for the development of the rule stated has been a consumers' pressure, and there is not the same demand for the protection of casual strangers." RESTATEMENT (SECOND) OF TORTS, sec. 402A, COMMENT O.

*Piercefield v. Remington Arms Company,* therefore, was the first case to recognize a duty from a manufacturer to an injured bystander. The problem with the application of *Piercefield* to the case at bar is that the *Piercefield* holding was based upon implied warranty rather than negligence. One can imagine the court in *Piercefield* struggling with the concept of a "sale" and the notion of privity implied by that term in holding that there was an implied warranty between *Remington and Piercefield.* This same concept prevades the language of Comment "O" of the Restatement (Second) of Torts set forth above where the authors talk about a "consumer" who "buys" the "marketed product".

To the extent that *Elmore v. American Motor Corporation* dealt with strict liability in tort rather than warranty, it is more compatible with the facts of the instant case. For a discussion of *Elmore* and other cases dealing with the problem of bystander liability, see Comment, *Strict Products Liability to the Bystander: A study in Common Law Determinism* (1971), 38 *U. CHICAGO L. REV.* 625, 632-35; *see also,* ANNO., *Products Liability : Extension of Strict Liability in Tort to Permit Recovery by a Third Person Who Was Neither a Purchaser Nor User of Product* (1970), 33 *ALR.3d* 415.

strict liability in tort, the Court held that "an innocent bystander does have a cause of action against a manufacturer under the doctrine of strict liability in tort for a defective product." (326 F.Supp. 751, 755.) Echoing the sentiments of the California Supreme Court in *Elmore*, the district court in *White* declared that:

"It seems somewhat incongruous to say that a user or consumer of a product has a right of action against the manufacturer of a defective product, but to withhold protection from an innocent bystander who has suffered injuries through no fault of his own, which injuries were caused by the defective product solely because at the time he received his injury he was not using or consuming the product, but was merely standing by innocently minding his own business when he was suddenly injured by another's use of the defective product. 326 F.Supp. 751, 754."

We agree with the reasoning *Suvada*, *Elmore*, *Piercefield* and *White* that a bystander or nonuser is not, simply by reason of that status, barred from seeking recovery from the manufacturer of a product.

■■ We now turn to the second issue raised by this appeal, namely, whether under the facts outlined in the complaint the defendant manufacturer owed the plaintiff a duty to exercise ordinary and reasonable care in the design of its motor vehicle. This is, of course, a question of law for the court, a proposition so firmly established as to require no citation.

Is a motor vehicle manufacturer under a duty to exercise ordinary and reasonable care in the design of its product to protect human beings from foreseeable injuries where the design was not the proximate cause of the initial collision? First, we note that the disparate views with reference to this proposition are represented by the holding in *Larsen v. General Motors Corp.* (8th Cir., 1968), 391 F.2d 495, and in *Evans v. General Motors Corp.* (7th Cir., 1966), 359 F.2d 822, *cert.* den., 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70.

In *Larsen* the plaintiff was driving a Corvair manufactured by defendant. The accident was a head-on collision and the steering mechanism was thrust into plaintiff's head. Plaintiff alleged negligent design of the steering mechanism, negligent failure to warn of the inherently dangerous condition to the user, and breach of express and implied warranties; *plaintiff did not claim that the design defect caused the collision,* and it plainly did not. In reversing a summary judgment for the defendant the *Larsen* court said,

"Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer

should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producting impacts. *No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident,* as the accident and the resulting injury, usually caused by the so-called "second collision" of the passenger with the interior part of the automobile, all are foreseeable. *Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable. Larsen v. General Motors Corp.,* 391 F.2d 495, 502 (8th Cir., 1968). (Footnote omitted.) (Emphasis added.)"

In *Ford Motor Co. v. Zahn,* (8th Cir., 1959), 265 F.2d 729, plaintiff was riding as a passenger in a car manufactured by Ford. When the driver made an emergency stop to avoid striking another car, plaintiff's head struck the dash and he suffered an eye injury when he struck an allegedly defective ash tray. The Court held that a jury question existed as to whether or not the manufacturer had exercised ordinary care to inspect the ash tray for defects. This case, too, predicates liability upon a defect which did not precipitate the accident.

A contrary position, however, was adopted by the Seventh Circuit in *Evans v. General Motors Corp.* (7th Cir., 1966), 359 F.2d 822 *cert.* den., 385 U.S. 836, 87 S.Ct. 83, 17 L.E.2d 70. In *Evans* plaintiff's decedent was killed when the vehicle in which decedent was riding was constructed with an x-frame instead of a perimeter frame which allegedly would have decreased the vulnerability of occupants in the car. Hence, *Evans* dealt with an alleged design defect which did not cause the collision. The *Evans* court held that a manufacturer is under no duty to "* * * make his automobile accident-proof or fool-proof; nor must he render the vehicle 'more' safe where the danger to be avoided is obvious to all. Perhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law." *Evans v. General Motors Corp.* (7th Cir., 1966), 359 F.2d 822, 824 (Citations omitted), *cert.* den., 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70. Thus, in *Larsen* and *Evans* were the divergent views stated,

and various courts have adopted one or the other when confronted with the problem.[2]

It seems to us that the rationale of *Larsen* is the more cogent and reasoned approach to the difficult problem of design defect as it affects the automobile industry. To hold otherwise, in the "second collision" cases, for example, would permit the manufacturer in the face of the high incidence of injuries sustained by those injured in automobile accident, to fill the passenger compartment with all sorts of sharp protrusions and gimcracks capable of producing severe injuries or death and which serve no purpose other than eye appeal, and then survey the resulting misery with the complacent knowledge that, since these items of hardware did not initiate the chain of events, it was secure from responsibility.

Secondly, we have traditionally defined proximate cause in terms of injury, *not* in terms of collision. (See 15.01 I.P.I.2d). There would appear to be no sound reason for departing from this rule of law.

Third, the "accident proof car" argument, as set forth in *Evans* and cases which follow that holding, seems to us to be an inaccurate statement of the duty imposed by *Larsen*. No designer or manufacturer is being confronted with the duty of producing such a vehicle, a task which is no doubt presently impossible. However, the industry cannot be permitted to avoid responsibility to the public under the guise of the "crash proof car" argument when it places a vehicle in the stream of commerce which contains a design defect capable of causing injuries to human beings when a collision occurs from whatever cause.

---

[2] The cases which have adhered to the rationale expressed in *Larsen* include *Badorek v. General Motors Corp.* (Cal.App., 1971), 90 Cal.Rptr. 305; *Grundmanis v. British Motor Corp.* (E.D.Wis., 1970), 308 F. Supp. 303 (Applying Wisconsin law); *Mickle v. Blackmon* (S.C.S.Ct., 1969), 166 S.E.2d 173; *Dyson v. General Motors Corp.* (E.D.PA., 1969), 298 F.Supp. 1064 (Applying Pennsylvania law). The district court in *Grundman* is rejected the holding in *Evans* with the declaration that "to adopt the position of the majority in *Evans* * * * would be to ignore reality, for the foreseeability of accidents is a matter of public and common knowledge." *Grundmanis v. British Motor Corp.*, (E.D.Wis., 1970), 308 F.Supp. 303, 306 (Footnote omitted.)

On the other hand, *Evans'* holding has been accepted and adopted in *Schemel v. General Motors Corp.* (7th Cir., 1967), 384 F.2d 802, *cert.* den., 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1134; *Shumard v. General Motors Corp.* (E.D. Ohio, 1967), 270 F.Supp. 311 (Applying Ohio law); *Walton v. Chrysler Motor Corp.* (Miss.S.Ct., 1970), 229 So.2d 568; *Ford Motor Co. v. Simpson*, (Miss.S.Ct., 1970), 233 So.2d 797; *General Motors Corp. v. Howard* (Miss.S.Ct., 1971), 244 So.2d 726. See also, *Edgar v. Nachman* (N.Y.App., 1971), 323 N.Y.S.2d 53, where the Supreme Court of New York, Appellate Division, although not relying on *Evans*, held that under New York law there is no cause of action against a manufacturer for negligent design where the design was not the initial cause of the injury but only aggravated it.

A manufacturer should be held to the exercise of ordinary care to avoid the creation of such risks to the public. We see no great burden being placed on the industry if it is asked to use common sense and ordinary care in design. What logic distinguishes a duty to exercise care in manufacture from a duty to exercise equal care in design? Failure to do so in either step in the production of a vehicle may result in disagreeable consequences to the collision victim.

■■ We agree with *Larsen* that when there is negligent design * * * the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." *Larsen v. General Motors Corp.* (8th Cir., 1968), 391 F.2d, 495, 503.

■■ We therefore reject the broad assertions implicit in the "crash proof car" argument and hold that an automobile manufacturer does owe a duty to exercise ordinary care in design of its vehicles so as to avoid subjecting people, whether users or nonusers and whether injured in the first or "second collision", to unreasonable risks of harm when the risk is foreseeable.

■■ Turning now to the complaint in question—does it state a cause of action for negligent design? We hold that it does. Although inartfully drawn, it does allege a bare minimum of facts sufficient to reasonably inform the defendant of the "nature of the claim * * * he is called upon to meet." (ch. 110, par. 42(3) Ill. Rev. Stat. 1969.) Paragraph ten of Count III of plaintiff's amended complaint alleges that the truck manufactured by the defendant was "negligently designed * * * in that * * * (it) did not have thereto attached a reasonably safe rear bumper, fender or other similar shield." Paragraph eleven then goes on to allege that the defendant knew, or in the exercise of ordinary and reasonable care should have known, that in the absence of a bumper or shield persons on the public highway were subjected to an unreasonable risk of harm by virtue of the fact that in the event of a rear-end collision their vehicle could proceed unimpeded under the bed of defendant's truck.

■■ In holding that plaintiff's complaint does state a cause of action we are mindful of the legislative mandate that "pleadings shall be liberally construed with a view to doing substantial justice between the parties", ch. 110, par. 33(3) Ill. Rev. Stat 1969, and that "no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim * * * which he is called upon to meet." (ch. 110, par. 42(3) Ill. Rev. Stat. 1969.) Furthermore, in determining whether a complaint alleges sufficient facts

to state a cause of action the complaint as a whole, rather than its disconnected parts, must be considered. *Stenwall v. Bergstrom* (1947), 398 Ill. 377, 383; *Kita v. YMCA of Metropolitan Chicago* (1st Dist., 1969), 47 Ill.App.2d 409, 417; *Adams v. J. I. Case Co.* (4th Dist., 1970), 125 Ill.App.2d 388, 396. When we construe the complaint in question in its entirety we feel that it does conform to the requirements of the Civil Practice Act. Whether or not the plaintiff will prevail on the merits is a question for the trier of fact keeping in mind that the plaintiff can only recover "that portion" of her "damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." *Larsen v. General Motors Corp.* (8th Cir. 1968), 391 F.2d 493, 503.

For the reasons set forth above the decision of the Circuit Court of Montgomery County is reversed and this cause is remanded.

Reversed and remanded.

MORAN, P. J., and EBERSPACHER, J., concur.