JAMES A. PETERSON, Adm'r of the Estate of Maradean Peterson, *et al.* Plaintiffs-Appellants, *v.* LOU BACKRODT CHEVROLET Co., Defendant-Appellee.

(No. 72-188;

Second District—February 1, 1974.

*Rehearing denied March 21, 1974.*

Maynard & Brassfield, of Rockford, for appellants.

Reno, Zahm, Folgate, Skolrood, Lindberg & Powell, of Rockford, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This appeal was precipitated by an order of the Circuit Court of Winnebago County striking counts XIII and XIV of plaintiffs' amended complaint for failure to state a cause of action. Those counts sought recovery on the theory of strict liability against the dealer-seller of a used automobile for the death of one child and injuries to another child. Upon striking these counts, the trial judge entered an order finding there was no just reason for delay in the enforcement or appeal of the order.

■■ Two issues are presented for our determination. First, whether the doctrine of strict liability expressed in section 402A of the Restatement (Second) of Torts, and adopted in *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612, 210 N.E.2d 182, includes sellers of used automobile where it is not alleged that the defect existed at the time the automobile left the *manufacturer's* control. And second, can a "bystander", that is, one who is neither a user nor consumer of the product, recover on the theory of strict liability for injuries or death sustained?

James A. Peterson, as administrator of the estate of Maradean Peterson, the deceased minor, and Mark Peterson, a minor, by his father, sued defendant Lou Backrodt Chevrolet Co. for damages for the wrongful death and personal injuries here involved. In essence, counts XIII and XIV of the amended complaint allege that the defendant sold a used 1965 Chevrolet to one Cornelius Spradlin on June 11, 1971. While this automobile was being driven by one John Elder on September 3, 1971, it struck the two minor pedestrians when the brakes failed. The amended complaint further alleged that at the time of the sale on June 11, 1971, the Chevrolet was not reasonably safe due to certain specified defects in the braking system; and that as a direct and proximate cause of the defective brakes, the death and injuries resulted.

The first issue to be considered is one of first impression before the Illinois courts of review.[1] Since our Supreme court rendered its opinion in *Suvada*, the concept of strict liability in tort, as applied to defective products, has become increasingly expansive. For the reasons which follow, we hold that the doctrine of strict liability as enunciated in

---

[1] Counsel for plaintiffs has stated that this issue is one of first impression in the United States, but our research has revealed one reported case in which this issue was presented for review. In *Cornelius v. Bay Motors Inc.*, 484 P.2d 299 (Or. 1971), the Oregon Supreme Court assumed, without deciding, for the purposes of its decision, that sellers of used cars are subject to section 402A and that injured bystanders could enjoy the benefit of that rule. (See also, Annot. *Strict Liability in Tort: Liability of Seller of Used Product* (1973), 53 A.L.R. 3d 337.) Since the Oregon court expressly reserved its ruling on this issue, we will confine our reasoning to the Illinois cases concerning strict liability and the policies expressed therein.

*Suvada,* and expanded in its Illinois progeny, applies to those in the business of selling used motor vehicles.

 This holding is premised upon the fundamental policy of strict products liability which was expressed by the court in *Suvada,* 32 Ill.2d at 619, 210 N.E.2d at 186:

> "Without extended discussion, it seems obvious that public interest in human life and health, the invitations and solicitations to purchase the product and the justice of imposing the loss on the one creating the risk and reaping the profit are present and as compelling in cases involving motor vehicles and other products, where the defective condition makes them unreasonably dangerous to the user, as they are in food cases."

This statement was made with reference to the manufacturer of defective brakes; however, it is equally applicable to any seller of a defective product. Although sellers and dealers of used motor vehicles do not "create the risk" in the sense that this phrase was used in *Suvada,* it is readily apparent that such sellers and dealers do place motor vehicles into the stream of commerce in a manner not unlike that of a manufacturer or retailer. Thus, there is no merit to defendant's contention that the amended complaint does not meet the *Suvada* requirements inasmuch as there is no allegation therein that a defect existed in the automobile at the time it left the manufacturer's control, and that the manufacturer has not been named as a defendant herein. (*Sweeney v. Matthews* (1968), 94 Ill.App.2d 6, 236 N.E.2d 439, *aff'd* (1970) 46 Ill.2d 64, 264 N.E.2d 170.) The defendant in *Sweeney* made this same argument which the appellate court rejected, stating "In *Suvada* strict liability was applied to a manufacturer but the court noted that liability extends to a *seller* of a defective product." (Emphasis added.) *Sweeney,* 94 Ill.App.2d at 13, 236 N.E.2d at p. 442.

This interpretation by the *Sweeney* court is consistent with the plain terms of section 402A of the Restatement (Second) of Torts which also imposes liability on the seller of any defective products:

> "(1) *One who sells* any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> (a) *the seller is engaged in the business of selling* such a product, and
>>
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although

> (a) *the seller* has exercised all possible care in the preparation and sale of his product, and
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Emphasis added.)

And comment f to section 402A reads in part: "The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption." Furthermore, there is no express limitation of liability in section 402A, or its accompanying comments, to defects occurring in the manufacturing process. Accordingly, comment g reads:

> "*Defective condition.* The rule stated in this Section applies only where the product is, at the time it leaves the *seller's* hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him \* \* \* The burden of proof that the product was in a defective condition at the time that it left the hands of the *particular seller* is upon the injured plaintiff \* \* \*." (Emphasis added.)

■■■ Manufacturers of defective products are strictly liable for harm caused by such products as public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in such products which reach the market. Similarly, the imposition of strict liability upon a retailer arises from that person's integral role in the overall producing enterprise and affords additional incentive to safety. (*Vandermark v. Ford Motor Co.* (1963), 61 Cal.2d 256, 37 Cal. Rptr. 896, 391 P.2d 168; and *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill.2d 339, 247 N.E.2d 401.) Although the seller of used motor vehicles is not an immediate participant in the overall producing process as is the manufacturer or retailer, the fundamental safety, or deterrence purpose behind strict liability mandates the rule's application in this case. That is to say, if the seller of used motor vehicles knows that he may be held strictly liable for the sale of a defective vehicle that may result in injury to the purchaser or another, he will obviously exert every precaution to avoid the potential injury and liability that may occur. This factor of deterrence as justification for the imposition of strict products liability is well established. (*Escola v. Coca Cola Bottling Co.* (1944), 24 Cal.2d 453, 461, 462, 150 P.2d 436, 440-41 (Traynor, J., concurring); *Henningsen v. Bloomfield Motors Inc.* (1960), 32 N.J. 358, 379, 161 A.2d 69, 81; Restatement (Second) of Torts § 402A, comment c.) Our holding, therefore, should effectuate safer used motor vehicles to be placed into the stream of commerce; for this has been the desired result of the doctrine's application to manufacturers and retailers.

■■ Defendant, however, urges that since the seller acknowledges to the buyer that he is selling a used car, it is understood that the vehicle has had "use and wear." Defendant is mistaken in equating as a matter of law, use and wear with a defect in the car making the vehicle unreasonably dangerous. There may, however, be instances where a particular used car, at the time of sale, is so worn or is in such a condition that the ordinary purchaser would expect certain defects to be present (*Cornelius v. Bay Motors Inc.* (1971), 258 Or. 564, 484 P.2d 299); or the sale may be accompanied by a warning brought to the purchaser's attention that is definite and specific enough so that the ordinary purchaser would not expect a car to function safely without repair of the warned-of defect. Yet there is a distinction between use and wear, and a defect which causes the product to be unreasonably dangerous; and as our Supreme court enunciated, speaking through Mr. Justice Schaefer, in *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill.2d 339, 247 N.E.2d 401, at 403: "Although the definitions of the term 'defect' in the context of products liability law use varying language, all of them rest upon the common premise that those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function." Although the ultimate determination may often be difficult, the answer to the question of whether the product is defective rests within the province of the jury. This determination will only occur after all the evidence has been presented, which is not the case here.

■■ Furthermore, although not relevant to the issue of whether the amended complaint sufficiently states a cause of action in strict liability (*cf. Winnett v. Winnett* (1973), 9 Ill.App.3d 644, 292 N.E.2d 524), we deem it significant that implied and express acknowledgments arising in the sale of second-hand goods have a definite bearing on the ultimate strict tort liability of the used car seller. Particularly in the sale of second-hand goods, a product should be considered defective within the meaning of section 402A (Restatement (Second) of Torts) only if at the time it leaves the seller's hands, it is in a condition not contemplated by the ultimate consumer, which makes the product dangerous to an extent beyond that which would be expected by the ordinary consumer who purchases it, with the ordinary knowledge common to the community concerning its characteristics. (*Dunham v. Vaughan and Bushnell Manufacturing Co., supra*, at pp. 342-3; *Cornelius v. Bay Motors Inc., supra*, at 305; Restatement (Second) Torts § 402A, comments g, i; Annot. *Strict Liability in Tort: Liability of Seller of Used Product* (1973), 53 A.L.R. 3d 337, 340; Annot. *Products Liability: Product As Unreasonably Dangerous or Unsafe under Doctrine of Strict Liability in Tort* (1973), 54

A.L.R.3d 352.) One can only determine what the ordinary consumer had a right to expect by the implications, express or inherent, in the sale of the product to him. (*Markle v. Mulholland's Inc.* (Or. 1973), 509 P.2d 529, 534.) Thus the condition, age, mileage, and price of the car and even express representations made by the seller to the buyer should be considered by the jury to determine whether the used automobile in question failed to perform in the manner reasonably to be expected of it.

Our holding in this appeal is further strengthened by the decision in *Galluccio v. Hertz Corp.* (1971), 1 Ill.App.3d 272, 274 N.E.2d 178, wherein the court extended the doctrine of strict liability to bailors for hire who rent motor vehicles to the public. In *Galluccio,* the plaintiffs rented a 1963 Ford Econoline Van from Hertz in 1967. As a result of defective brakes in their rented used vehicle, the plaintiffs were injured in a collision. The manufacturer of the rented vehicle was not named as a defendant since there was apparently no evidence that the brakes on the four year old van were defective at the time it left the manufacturer's control.

In support of its holding, the court in *Galluccio* relied upon the rationale expressed in *Suvada* and *Cintrone v. Hertz Truck Leasing and Rental Service* (1965), 45 N.J. 434, 212 A.2d 769. Quoting from *Cintrone,* the court stated in 1 Ill.App.3d at 278, 274 N.E.2d at 182:

> " 'A bailor for hire, such as a person in the U-Drive-It business, puts motor vehicles in the stream of commerce in a fashion not unlike a manufacturer or retailer. * * *
>
> Since the exposure of the user and the public to harm is great if the rented vehicle fails during ordinary use on a highway, the answer must be that it (strict liability) continues for the agreed rental period. The public interests involved are justly served only by treating an obligation of that nature as an incident of the business enterprise. *The operator of the rental business must be regarded as possessing expertise with respect to the service life and fitness of his vehicles for use.* That expertise ought to put him in a better position than the bailee to detect or to anticipate flaws or defects or fatigue in his vehicles. * * *' " (Emphasis in original.)

This reasoning is equally cogent when applied to sellers and consumers of used motor vehicles. Defendant, however, in addition to its aforementioned contentions, urges that there are still other reasons for refusing to apply strict liability to sellers of used automobiles: First, unlike sellers of new cars, the used car dealer cannot arrive at indemnity and price agreements with the manufacturer. Second, imposition of strict liability to sellers of used cars will force the seller to completely dis-

assemble and safety check each car to be resold. We do not find these reasons compelling.

It is readily apparent that a used car dealer, analogous to the lessor in *Galluccio,* knows or reasonably should know that certain parts on automobiles become worn and possibly defective as the vintage of the vehicle increases. This fact is further reason to induce sellers of used automobiles to either inspect and repair them, or remove them from the market place before such vehicles cause unnecessary harm. There is no obligation upon a dealer to accept a "trade-in", or purchase a used vehicle at auction; but if he does, he can properly inspect the vehicle in advance and offer a trade-in or auction price which reflects the cost of any repairs the dealer anticipates will be necessary in order to make the vehicle reasonably safe. The cost of these repairs can further be distributed or absorbed upon re-sale of the used vehicle. Furthermore, like a manufacturer or retailer, the used car dealer can insure his enterprise against any unexpected liability arising from one of the vehicles which he places into the stream of commerce.

Therefore, not unlike the application of strict liability to manufacturers and sellers of new products, the doctrine's application to those in the business of selling used motor vehicles should have a twofold effect. Firstly, through regulation of the used vehicle's purchase and re-sale prices, any added burden of inspecting and repairing can be distributed among the seller, the dealer and the consumer. And secondly, and most important, the consumer and the public can be assured that all reasonable efforts will be taken by the seller to enhance the safeness of the vehicle; and if such efforts are not taken, recovery may lie in strict tort liability. Thus, having determined that the doctrine of strict liability applies to those in the business of selling used cars, it is now necessary to consider the bystander issue.

The question of whether a bystander can employ the doctrine of strict liability in a lawsuit has been thoroughly considered by reviewing courts and legal commentators. (*E.g., Piercefield v. Remington Arms Co.* (1965), 375 Mich. 85, 133 N.W.2d 129; *Elmore v. American Motors Corp.* (1969), 70 Cal.2d 578, 451 P.2d 84; Note, *Strict Products Liability to the Bystander: A Study in Common Law Determinism,* 38 U. Chi. L. Rev. 625 (1971); Annot. 33 A.L.R.3d 415.) These authorities indicate that permitting the bystander to maintain an action based on strict tort liability is the more enlightened approach. This has been the result when this issue has been considered in light of Illinois law. *White v. Jeffrey Galion, Inc.* (E.D.Ill. 1971), 326 F.Supp. 751; *McKee v. Brunswick Corp.* (7th Cir. 1965), 354 F.2d 577; *Mieher v. Brown* (1972), 3 Ill.App.3d 802, 278 N.E.2d 869, *rev'd. on other grounds,* 54 Ill.2d 539, 301 N.E.2d 307

(1973); See also *Lewis v. Stran-Steel Corp.* (1972), 6 Ill.App.3d 142, 285 N.E.2d 631 (dissenting opinion).

The rationale behind this result is best expressed by this statement of the California Supreme court in *Elmore v. American Motors Corp.* (1969), 70 Cal.2d 578, 75 Cal.Rptr. 652, 657, 451 P.2d 84, 89:

> "If anything, bystanders should be entitled to greater protection than the consumer or user where injury to bystanders from the defect is reasonably foreseeable. Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, whereas the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made * * * to extend greater liability in favor of the bystanders.
>
> * * *
>
> * * * the doctrine of strict liability in tort is available in an action for personal injuries by a bystander against the manufacturer and the retailer."

■■ We agree with the California Supreme Court's cogent reasoning and hold that it is equally applicable when directed to those in the business of selling used cars.

For the foregoing reasons, we do not believe that counts XIII and XIV of the amended complaint should have been stricken. Although the doctrine of strict liability has met with rapid and widespread acceptance, the doctrine relates only to defective products which are not reasonably safe, but does not make a seller an insurer that no injury will result from the use of his new or used products. Thus, before the plaintiffs can recover, they must sustain their burden of proof as to all the essential elements of a cause of action based upon strict liability; and nothing we have said should be construed as expressing any opinion on the merits.

We reverse and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

SEIDENFELD and DIXON, JJ., concur.