Willie H. Lewis *et al.*, Plaintiffs-Appellees, *v.* Stran-Steel Corporation, Defendant-Counter-Claimant-Appellant—(General American Transportation Corporation, Intervenor, Counter-Defendant, Appellee.)

(No. 53140;

First District—June 16, 1972.

TRAPP, P. J., specially concurring.
CRAVEN, J., dissenting.

Vogel & Vogel, of Chicago, (L. H. Vogel and Robert Guritz, of counsel,) for appellant.

Philip E. Howard, of Chicago, (William J. Harte and Stuart N. Litwin, of counsel,) for appellee Willie H. Lewis.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (Caryl P. Bonotto and John W. Kearns, of counsel,) for appellee General American Transportation Corporation.

OPINION AS MODIFIED AND SUPPLEMENTED ON REHEARING

Mr. JUSTICE SMITH delivered the opinion of the court:

■■ Of the many questions presented by this appeal, we can disregard all but one if the rule in *Pedrick v. Peoria and Eastern R.R. Company*, 37 Ill.2d 494, 229 N.E.2d 504, is applicable. This rule, as we know, is

simply that verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could ever stand.

■■ Whether the proof presents a factual question or not for the jury's consideration, while easy to state, is difficult in application—or at least can be, as is the case here. Defendant moved for a directed verdict and for a judgment *n.o.v.* and from their denial it appeals. As we have said, other issues are raised, but we do not reach them if we believe that it may fairly be said that all of the evidence viewed most favorably for plaintiff so overwhelmingly favors defendant that no contrary verdict based on the evidence could ever stand. It is our judgment that such is the case and that the trial court was in error in denying the defendant's motion for judgment notwithstanding the verdict.

This conclusion mandates a summary recital of *all* of the evidence. Plaintiff was injured—severely—when some steel flooring sheets or panels slipped from their bundle or container and struck him in the back. It happened like this. Bundles of nailable steel flooring panels were delivered to plaintiff's employer for use in the manufacture and construction of railroad freight cars. They were unloaded and stored on the premises for later removal to the erection site. Each panel of flooring was about four feet wide, four feet high and seven or eight feet long. They were stacked one on top of the other and a bundle consisted of fifteen panels with wooden strips between each as separators. Underneath the first panel of the fifteen (counting upwards) were three 4″ x 4‴s which acted as a pallet so that the forks of a fork lift truck could scoop the bundle up. Widthwise, the bundle was encircled by three steel bands which were stapled to the three 4″ x 4‴s which served them as we have seen to make a pallet. There were no steel bands running lengthwise. Fifteen panels interspersed with wooden separators ran the height to about four feet. It weighed 5,000 pounds, or thereabouts. Since we are viewing the evidence, as we must, in the light most favorable to the plaintiff (opponent) and against movant (defendant) we will assume as proved the fact that the widthwise steel bandings were loose. This avoids an extended discussion as to whether green wood was used as separators which shrank—effecting, so it was argued, the loose condition. Incidentally, defendant did not do the actual bundling, but rather it was done by another under its direction and control. Such other party was furnished drawings, and according to these, lengthwise bands were to be used if the bundle of panels were to be loaded for shipment crosswise in a railroad car and if the panels would then extend above the sides of the car. While the drawing specified that the wood separators

were to be of hardwood, 3¾" x ¾", it was silent as to the type of wood and whether it should be painted or otherwise impregnated. We will assume that green wood will shrink and maybe it did in this case, for as we said, the widthwise banding was loose—loose enough to put a "hand in between".

On the morning in question, one of these bundles was being moved within the plant by a fork lift truck. Initially, the operator carried the bundle about a foot and a half above the ground, but then raised it to get over the top of some welding machines. The bottom of the bundle was now some four feet above the floor. This obscured his view, for as recited earlier, the height of the bundle was about four feet, thus assuming that he could see nothing or very little from under the bundle, his vision was obscured from the floor to a height of eight feet. While so moving, the left front wheel dropped into a hole tipping the truck and, of course, the fork and the bundle, which fell off. One of the panels struck the plaintiff. No issue is made that he might have avoided the injuries he suffered, or that he was in any way at fault. The facts are that he did not even see the truck coming, the bundle falling, and the panels cascading towards him. About half of the panels came to rest against the prong of the fork lift and the other half went into plaintiff's work area. One of the witnesses described the panels as sliding out one on top of the other "like a deck of cards" in the direction of the plaintiff—"the whole load just going down the stairs gradually down from one another". The three steel bands were not broken and remained around the width of the panels leaning against the truck. As we have seen, there were no lengthwise bands.

■■ We think this is a fair summary of the evidence and we have summarized it we feel in the light most favorable to the plaintiff. Since the accident occurred in Indiana, its law governs, though so far as we can see, the applicable rules there, (*Cornette v. Seargeant Metal Products, Inc.* (Indiana) 258 N.E.2d 652), and here, (*Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182), are the same. Plaintiff's action was based on strict liability in tort and negligence, that is, that the proximate result of his injuries was occasioned by the unreasonably dangerous condition of defendant's product or the negligence of defendant in the design of the bundle. Simply put, plaintiff's action is a products liability case: That the bundle of panels was unreasonably dangerous, that such dangerous and defective condition was defendant's fault, and caused his injuries. He says here that there is sufficient evidence under either the theory of negligence or strict liability in tort to support the verdict. Defendant argues on the other hand that the proximate cause of plain-

tiff's injuries was the misuse or mishandling of its product—the bundle—by others and that such mishandling negates tort liability on its part.

■■ Was the use here—or misuse as characterized by defendant—of its product reasonably foreseeable by it—as a matter of law—for a duty to arise. It is said that "misuse"—here more accurately mishandling—negates the existence of a defect and causation as well, because such mishandling rather than the condition of the product itself is responsible for the injuries. (*Greeno v. Clark Equipment Co.* (1965, DC Ind.), 237 F.Supp. 427.) There it was said that a defective condition is a condition not contemplated by the user or handler, and which is unreasonably dangerous to him, that is, more dangerous than would be contemplated by the ordinary user with the ordinary knowledge of the community as to its characteristics and uses, but that a misuse, that is, a use different or more strenuous than that contemplated to be safe by ordinary users—a misuse—"would either refute a defective condition or causation". Again the question is: Was the misuse here foreseeable? Or does this beg the question—for can "mishandling" or "misuse" ever really be foreseeable as a matter of law! Regardless, foreseeability is the test—did the defendant here owe a duty to the plaintiff to foresee or perceive the use (or misuse) its product was put to. If it did or could, then its product would be defective or in a condition which was unreasonably dangerous and if other elements of strict liability are present, liability could ensue. Foreseeability here encompasses in part the aspects of angle and force. An angle sufficient to cause a sideways slipping, and a force sufficient to cause a movement—a falling.

■■■ Putting the question another way, could not it be reasonably contemplated that this bundle of steel panels, considering its weight and height, its length and breadth, its built-in pallet, its widthwise banding, would always be carried on a level to forestall sideways slippage. Was it unreasonably foreseeable that this bundle of steel plates, weighing two and one-half tons, would be dropped on its end with its uppermost panels falling some eight feet? In the words of *Greeno,* this is a use or happenstance in our opinion different or more strenuous than that which could have been reasonably contemplated by defendant. It was certainly an unsafe way to handle the bundle! If so this "misuse", it can be said, in effect refutes the existence of a defective condition and therefore causation. As was said in *Evans v. General Motors Corp.* (1966), 359 F.2d 822 with regard to automobiles: "A manufacturer is not under a duty to make his automobile accident-proof or fool-proof; nor must he render the vehicle 'more' safe where the danger to be avoided is obvious to all." The duty, *Evans* holds, which a manufacturer

owes to the users of its product presents an issue of law for the court. A manufacturer is not an insurer and he is not bound to anticipate and hence foresee the mishandling of its product. To paraphrase *Schemel v. General Motors Corp.* (1967), 384 F.2d 802, the dangers attendant on dropping two and one-half tons of steel panels sideways from a height of eight feet is neither latent nor concealed. In *Schemel,* it was held that while an automobile manufacturer can foresee that a vehicle could be operated in excess of the speed limit, it was "not bound to anticipate and guard against grossly careless misuse of his product by reckless drivers".

■■ In determining duty, *i.e.,* the duty of defendant to foresee the use to be had from which plaintiff's injuries flow, we must weigh the difficulty in foreseeing and eliminating the risk of injury from the use, against the gravity, both in probability and in magnitude, of the risk of the user's reliance on the defendant's ability to discover and prevent defects. As we said in *Dunham v. Vaughan & Bushnell Mfg. Co.,* 86 Ill.App.2d 315, 229 N.E.2d 684: "Where the use is extremely unconventional and the cost of discovery to prevent the danger is excessive, a duty generally has not been imposed, but where the cost of prevention is minimal and the degree of reliance is high and the gravity of the risk substantial, a tort duty has generally been imposed."

■■ So here too, defendant is not an insurer against "grossly careless misuse of its product" by fork lift truck drivers whose vision has been obscured and whose truck falls into a hole causing its load to tilt and fall. A two and one-half ton steel package, 4' x 4' x 8' is to be handled with care. It needs no sign of warning of dangers which are extrinsic, patent, and exoteric as opposed to intrinsic, latent and esoteric. Its dangerous condition when tilted at a height is so apparent that an omission to discern such would be negligence itself. Paraphrasing *Evans* above, defendant here is not under a duty to make its bundle of steel panels "accident-proof or fool-proof" nor must it render its bundle more safe "when the danger to be avoided is obvious to all". As Section 402A of the Restatement of the Law of Torts, 2d, provides in comment (g):

"The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed   *   *   *."

Comment (h) of the same section of the Restatement in like vein states:

"A product that is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling, as where a bottled beverage is knocked against a radiator to remove the cap, or from abnormal preparation for use, as where too much salt is added to food, or from abnormal consumption, as where

a child eats too much candy and is made ill, the seller is not liable * * *."

The handling of defendant's product here—the bundle—strikes us as anything but normal handling, rather it is abnormal. In our opinion it was the mishandling, not the product, which caused the harm, and only if such can be reasonably foreseen (at which point it ceases to be "mishandling") does a duty arise to do something to rectify what is now a defective condition. As defendant points out, if a manufacturer is obliged to foresee that a consumer will drop its two and one-half ton product, then any such product would be *ipso facto* dangerous, hence defective and hence liable—in effect an insurer. Under the criteria set forth above from *Dunham* we perceive no duty to anyone to prevent the happenstance of falling. It is only when a product is used in the way that can be foreseen that a duty arises. The fact that it could be reasonably foreseen that a fork lift truck would be used to move the bundle is not the same as saying that defendant could have reasonably foreseen (and therefore under a duty to attempt to prevent same) that the truck would fall into a hole tilting its load and causing the panels to cascade out.

To put it another way, for liability, there must be more than an injury to plaintiff. (*Fanning v. LeMay,* 38 Ill.2d 209, 230 N.E.2d 182.) The injury must be caused by the fault of defendant. For there to be fault, there must be a duty owed the plaintiff by defendant. For that duty to arise in our context it must be said that defendant can perceive reasonably the danger, for the orbit of duty is the orbit of danger so perceived. Because we cannot say here that defendant should have so perceived, we find no duty, and if so, plaintiff's action must fail. That two and one-half tons of falling steel is a hazard cannot be gainsaid, but this is different from saying that a manufacturer who bundles such must guard against such happening.

■■■ Plaintiff argues, however, that if lengthwise bands had been present, or the widthwise bands tighter, the hazard present here could have been avoided. He points to defendant's shipping requirements that if the bundle is to be carried crosswise in a railroad car and extend above the sides lengthwise strapping is required. But the nonforeseeability of what did happen heavily outweighs any duty upon defendant to strap the ends of the bundle, and in saying such we are assuming that lengthwise bands would have held the panels in. Whether such is in fact true is pure speculation. The same can be said for the widthwise banding. At least it is here, because there was no evidence that they would. Rather it seems that the purpose of the steel bands lengthwise was for the purpose of rail shipment. As was said in *Day v. Barber-Colman Company,* 10 Ill.App.2d 494, 135 N.E.2d 231:

"\* \* \* [I]t is not of itself negligence to use a particular design or method in the manufacture or handling of a product or doing a job which is reasonably safe and in customary use in the industry, although other possible designs, whether in use in the industry or not, might be conceived which would be safer \* \* \*. The fact that an accident was, conceivably, avoidable, and might conceivably, have been prevented does not warrant a jury in finding that there was fault or negligence by the defendant in not anticipating and providing against it."

The hazard came into existence only when the bundle was mishandled in such a way that it tipped and spilled its contents.

■■ The duty devolving upon defendant was to make its product not only reasonably safe for the normal handling by a fork lift truck and for handling in other ways which were reasonably foreseeable or foreseeably probable. The standard then, is what a reasonable manufacturer should anticipate as to how its product might likely be used or handled. If the likelihood of a dangerous handling under all the circumstances is hardly probable, lack of duty becomes a question of law and not of fact and the *Pedrick* rule becomes applicable. This is the situation here. Again, as we said in *Dunham*:

"We are persuaded by the determination of the Court in Hardman v. Helene Curtis Industries, Inc., 48 Ill.App.2d 42, 198 N.E.2d 681, where it is said that the question of what constitutes an ordinary use is clearly a question of fact and that the foreseeability of careless use is a matter for a jury, unless the use of the product was, in fact, so unintended and unforeseeable that the case should be taken from the jury."

Thus far we have discussed the duty of the defendant to the plaintiff from a standpoint of a misuse of the product by another party—in this instance a fellow employee—and whether or not that such misuse was reasonably foreseeable by the manufacturer. Earlier we have noted that perhaps the conduct of the user in this case is less accurately characterized as a misuse as it is a "mishandling", that is, mishandling the product with the present or apparent knowledge of an existing dangerous condition when so handled (or mishandled). We think it is clear from a careful reading of *Williams v. Brown Mfg. Co.*, 45 Ill.2d 418, 261 N.E.2d 305, that there is a marked difference between the tort concept of foreseeability based on a misuse or mishandling of a product and the concept of an assumption of risk which results from a mishandling of the product with a present or apparent knowledge of an existing dangerous condition when so handled or mishandled. Foreseeability is part and parcel of tort liability, that is, the seedbed from which a duty to foresee

reasonably the consequences of one's own act. This is part and parcel of plaintiff's case based on tort liability and we observe no such duty here.

■■■■ On the other hand, assumption of risk is an affirmative defense. In this case, the lift operator testified that he had in other instances observed that the restraining bands were loose on the bundle and was aware that such circumstance frequently and generally obtained. It is not unreasonable to conclude that he was or should have been aware of the fact that raising these panels an additional four feet, coupled with the obscured visibility on his part, would cause slippage with consequent possible danger to himself and to others. This being true, there is no theory under products liability where the user or consumer of the product can benefit from a duty owed by the manufacturer to him. The manufacturer is insulated under such circumstances from liability for the very cogent reason that no duty rests upon him where the user mishandles or misuses the product with knowledge of its dangerous condition when so handled or so misused and where the proximate result of such action is an injury to himself. Whether foreseeability or assumption of risk is used, there is no duty here to the user-consumer.

What of the bystander who, in our context, was merely at a given place at a given time. It is patent under the facts here that the plaintiff was merely engaged in his work for his employer and was unaware of any danger to himself. It is patent that he could not and did not assume the risk. We have already determined that the mishap here occurring was not foreseeable by the manufacturer. So far as the bystander is concerned here we deal solely with the question of foreseeability and in its absence, there can be no liability to the bystander.

■■ The dividing line between the user-consumer and the bystander is narrow and tenuous, but it is there. A bystander's right to recover is not *per se* dependent upon the user-consumer's right to recover and neither *is in any sense a right* derived from the other. In fact, it perhaps might be said that the innocent bystander is entitled to greater protection than the user-consumer who has the opportunity to acquaint himself with any defects in the product either through reading of instruction manuals or observation. This does not mean, of course, that the manufacturer is an insurer. It is not inconceivable that a bystander may assume the risk by positioning himself in the presence of a known danger from a product. If, however, as a matter of fact, a product is defective and injures a bystander who has not so positioned himself, without any intervening agency, a duty is imposed upon the manufacturer. On the other hand, as here, where the user-consumer mishandles the product with the knowledge actual or apparent that such handling or mishandling is likely to

cause injury to himself or others, it is in fact the tort of the user and not of the manufacturer that produces the injury. So it is here. The non-liability of the manufacturer to the bystander under the facts in this case is not predicated upon any active-passive theory of negligence or upon any conception of nonassumption of risk. It is predicated upon the proposition that there is no duty to a bystander under the circumstances here shown so far as the manufacturer is concerned. To so hold is in our context to make the manufacturer an insurer as to this plaintiff and to go beyond the perimeter of any proper concept of products liability so far accepted by the courts. Such being the case, the court should have entered a judgment *n.o.v.*

Left undecided as seemingly passe in our original opinion was the appeal by defendant from the trial court's denial of its motion for a new trial and also the dismissal of its counterclaim against plaintiff's employer for indemnity under the "active-passive" doctrine of liability. Defendant now requests a ruling and points to Section 68.1 (6) of the Civil Practice Act. (Ill. Rev. Stat. 1969, ch. 110, par. 68.1(6).) This section, in part reads that the trial court must rule upon all relief sought in a post-trial motion even though the ruling on one point renders unnecessary a ruling on other relief sought and that such "conditional rulings become effective in the event the unconditional rulings are reversed, set aside or vacated". The section then goes on to say that an appeal from the final judgment, as here, brings up for review the conditional rulings, and that we should, if we determine the unconditional rulings were erroneous, then review and determine the conditional rulings, *i.e.*, the refusal to grant a new trial and dismissal of the counterclaim. Specifically, the section reads that "The [trial] court must rule upon all relief sought in all post trial motions" and with regard to a reviewing court, "The reviewing court shall, if it determines that the unconditional rulings were erroneous, review and determine the conditional rulings."

■■■■ We can appreciate defendant's request as, of course, there is a possibility of further appeal from us—which under various conjectural situations might necessitate a remand to this court and otherwise engender further vexations. However, we do not think this section mandates that a reviewing court should *make* conditional rulings—which is precisely what defendant requests of us. We distinguish between reviewing and determining conditional rulings and *rendering* them. If we had affirmed the trial court on the point that a motion for judgment *n.o.v.* was properly denied, then, of course, we should review the denial of the motion for a new trial and the dismissal of the counterclaim. But in reversing, we direct that the court to allow the motion for judgment

*n.o.v.* and enter judgment for defendant. Therefore, it seems to us, that such action on our part renders unnecessary a ruling on the alternative points raised by this appeal. True, the trial court "must nevertheless rule conditionally on the other relief sought", but not a reviewing court. For us to take a different stance would in effect mean the determination of moot matters, which we think we should not do for such would then be the "rule of the case", or even a precedent—and rendered in a most imperfect setting. Courts of review should shy away from *in vacueo* renderings, as such renditions lack the persuasiveness that comes from "fish and cut bait" decisions that are dispositive of real disputes. Accordingly, the request of defendant for the rulings is denied.

The judgment appealed from is reversed and remanded with directions that the judgment for plaintiff be set aside and vacated and judgment entered for defendant. Because we hold as we do, the question of liability over of the plaintiff's employer to defendant becomes moot.

Reversed and remanded with directions.

Mr. PRESIDING JUSTICE TRAPP specially concurring:

I concur in the result reached for reasons not considered in either the principal opinion or the dissent, and which I have not found discussed in either the reported cases or the voluminous literature upon the subject of products liability.

It is suggested that within the definitions of the statement of products liability, sometimes called manufacturer's liability, and of the several terms used in such statement, plaintiff has failed to make a *prima facie* case.

In *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182, the court said:

"The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control."

This is essentially the language of the Restatement of the Law of Torts, 2d, par. 402A.

Within such statement of the doctrine or rule of strict liability, it is important to note the meaning of the words, "[T]hat the condition was an unreasonably dangerous one" as such is stated in par. 402A of the Restatement. Comment (i) defines and discusses the denotation of the words "unreasonably dangerous" with this sentence:

"The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer * * *. The article sold must be dangerous to an extent

*beyond that which would be contemplated by the ordinary consumer* who purchases it with the ordinary knowledge common to the community as to its characteristics." (Emphasis supplied.)

Section 402A, par. g, described a "defective condition" in the language:
"The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which would be unreasonably dangerous to him."

Products liability as a theory of law arising through a latent unexpected hazard of which the user is not aware is stated in the oft-cited *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 377 P.2d 897, 13 A.L.R.3d 1049, in the language:
"To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in any design and manufacture of which *plaintiff was not aware* that made the Shopsmith unsafe for its intended use." (Emphasis supplied.)

In the reported cases which have extended recovery to non-users or bystanders under the theory of products liability, the factual circumstances reported show that the unreasonably dangerous condition was not, in fact, known to the user or operator. In *Elmore v. American Motors,* 70 Cal.2d 578, 451 P.2d 84, an almost new car dropped its drive shaft causing it to go out of control and strike bystanders. Nothing in the opinion suggests that the operator was aware of the condition. In *Piercefield v. Remington Arms,* 375 Mich. 85, 133 N.W.2d 129, a shotgun shell caused the weapon to explode and injure a bystander. It seems reasonable to conclude that the exploding shotgun would not be contemplated by the purchaser of the shell. The opinion in *White v. Jeffrey Gallion, Inc.,* 326 F.Supp. 751, suggests no facts showing that the defective steering valve at issue had been observed to be defective. In fact, the opinion suggests that there was no operator of the ram car concerned.

In *Mitchell v. Miller,* 26 Conn. Supp. 142, 214 A.2d 694, an automobile left in "park" gear rolled down a hill and injured another. The allegation of defective manufacture of the transmission was admitted by demurrer and no factual aspects are reported.

The opinion in *Williams v. Brown Mfg. Co.,* 45 Ill.2d 418, 261 N.E.2d 305, in its discussion of the "assumption of risk" by a user does not modify, enlarge or diminish the definition of the terms used to state products liability and in particular does not modify the statement of the meaning of the state of being "unreasonably dangerous". Such opinion actually restates the principles defining products liability and in

particular "unreasonably dangerous" in par. 402A in the context of pleading and burden of proof.

The record in this case clearly shows that the user of the fork lift was aware that the bundles were loosely strapped and was aware that such condition regularly was to be found, but that such user nevertheless drove the bundles in a blind fashion into a working area known to contain other workmen, as well as equipment and tools.

We suggest that products liability is a closely defined concept having as a keystone the definition of an unreasonably dangerous condition, *i.e.*, that there is a latent hazard causing an unexpected mishap during the intended use of the product.

It is usually said that the rule as stated in par. 402A of the Restatement does not make the manufacturer an insurer of his product. (*Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182.) We suggest that the rule or doctrine creating liability in a manufacturer is not properly employed to create liability of the manufacturer to a bystander where the user, in fact, acts or uses the product with knowledge of a known or obvious condition, and such acts are negligent or even wilful and wanton in their performance. The manufacturer should not become an insurer of the conduct of the user through the liability imposed because of the sale of his product.

Within the definition of product or manufacturer's liability, plaintiff has not made a *prima facie* case.

Mr. JUSTICE CRAVEN dissenting:

In this case the plaintiff presented virtually uncontradicted evidence to establish the existence of a product in a defective condition; that the product was defective at the time it left the seller's control; and the existence of a causal relationship between the defect and the plaintiff's injuries.

There is no controversy but that the steel bands around this bundle of nailable steel flooring were loose. Whether they were loose because they were put on that way or because of the subsequent drying out of green wood is immaterial. They were loose and the looseness is a defect.

The defendant knew or clearly should have known the nature of the handling that would be required with reference to its product. The evidence does not establish that it was handled in any unusual, and certainly in no unreasonable, manner. Richard Brosky, the operator of the fork lift truck, in his testimony described the movement of the bundles in and through a congested work area, over railroad tracks, and he described the fact that the left front fork wheel went into a hole—a hole located right under or by the tracks and the hole was only two or three inches

deep and some twelve or eighteen inches across. The driving of the wheel into such a relatively minor depression caused the bundle to tilt and the sheets of steel to slide out. The plaintiff, totally unaware of this operation and located twenty to thirty feet from it, sustained injuries when the sheets of steel flooring spilled out as is described in the majority opinion "* * * like a deck of cards." This use and handling of the product was certainly foreseeable and at most did present a factual issue for the jury. It certainly is not a misuse by the plaintiff's co-worker so as to insulate the defendant from liability.

The majority state that the defendant's lack of liability is predicated upon the proposition that there is no duty to a bystander as shown by this evidence so far as the manufacturer is concerned.

The application of the doctrine of strict liability as to bystanders is extensively discussed in an article in the University of Chicago Law Record, Volume 38, at page 625 (1971). The cases relevant to the issue are there collected. In discussing *Elmore v. American Motors Corp.,* 70 Calif.2d 578, 451 P.2d 84, the author states:

> "The court then stated four points which together constitute the clearest and most comprehensive judicial analysis of bystander recovery to date: (1) The public policy rationale underlying strict tort liability as announced in Greenman is equally applicable in bystander cases; (2) since strict tort liability applies even in the fact of attempted disclaimer, the doctrine may not be limited on the theory that no representation of safety is made to the bystander; (3) injury to a bystander is often foreseeable by the manufacturer and restriction on bystander recovery is but a vestige of the disappearing privity requirement; and (4) bystanders should receive greater protection than consumers and users, who may inspect for defects and purchase selectively."

Upon the disappearance of the concept of privity as a condition precedent to recovery, no valid reason has been suggested why an innocent bystander injured by a defect in the defendant's product cannot recover.

In *Mieher v. Brown,* 3 Ill.App.3d 802, 278 N.E.2d 869, (leave to appeal allowed May 23, 1972), Mr. Justice Simkins, speaking for a unanimous Fifth District Appellate Court, collects and discusses the cases relating to a manufacturer's liability to an innocent bystander for a defective product. I very much agree with the observations, holdings, and rationale in the *Mieher* opinion that specifically determines that a bystander or non-user is not, simply by reason of that status, barred from seeking recovery from the manufacturer of a product.

The majority opinion further suggests that the misuse here, as a matter of law, was unforeseeable. Such determination is difficult to

understand in view of our holding in *Dunham v. Vaughn & Bushnell Mfg. Co.*, 86 Ill.App.2d 315, 229 N.E.2d 684 aff'd. 42 Ill.2d 339, 247 N.E.2d 401, that foreseeability of careless use is a matter for the jury. As our Supreme Court noted in *Lance v. Senior*, 36 Ill.2d 516, 224 N.E.2d 231, after the event, hindsight makes every occurrence foreseeable. Clearly there was some risk in the way the product was handled and there was some likelihood of injury. The burden of guarding against it, however, would have been slight and in any event the misuse here by one other than the plaintiff is hardly such as to equal non-liability as a matter of law.

The thrust of the special concurring opinion seems to be that the user had knowledge of the defective condition; that the subsequent handling of the product with that knowledge constitutes, apparently as a matter of law, assumption of the risk and that such assumption of the risk is somehow or another imputed to the innocent bystander. It seems to me that such theory should be rejected. As observed by the court in *White v. Jeffrey Gallion, Inc.*, 326 F.Supp. 751, and quoted with approval in *Mieher*, it seems incongruous to say that a user or consumer has a right of action against a manufacturer of a defective product but an innocent bystander who has suffered injuries from no fault of his own has no such right of action. Thus, as I see it, the special concurring opinion resurrects the doctrine of privity and in so doing retreats from the philosophy found in *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182, and, seemingly, interposes assumption of the risk by the user as an absolute bar to recovery by a non-user bystander as a matter of law.

There are many other complex issues in this case relating to the third party complaint, the issue of active and passive negligence under Indiana law, all of which were resolved by the trial court in a comprehensive and scholarly opinion. There is no error in this record warranting appellate interference. The judgment entered upon the verdict should be affirmed.