DONALD WILLEFORD, a minor, by Robert Willeford, his father, next friend and legal guardian, Plaintiff-Appellee, *v.* MAYRATH COMPANY, Defendant-Appellant.

(No. 11262;

Fourth District—September 14, 1972.

TRAPP, P. J., specially concurring.
CRAVEN, J., dissenting.

Jack E. Horsley, William E. Larrabee, and Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellant.

Harlan Heller, of Ryan and Heller, of Mattoon, and L. C. Combe, of Greenville, for appellee.

Mr. JUSTICE RICHARDS delivered the opinion of the court:

This modified opinion is given after the plaintiff's petition for rehearing was granted and the court heard oral argument thereon. Rehearing was granted for the reason that the original decision was based on issues not specifically raised by the defendant giving the plaintiff no chance or reason to discuss such.

The defendant is sued as the manufacturer of a farm elevator of the conveyor type in regard to its design and manufacture in two counts, Count I being a negligence count, and Count II being a count in strict product liability in tort. This appeal is by the defendant from judgment for $107,875.59 on a verdict in favor of the plaintiff as damages for his personal injuries, the said amount being the amount of the verdict less credit given the defendant for the amount plaintiff received on a covenant not to sue another person. At the hearing of the post-trial motions filed by the defendant, Count II was stricken under the authority of the original opinion of the Supreme Court of Illinois in *Williams v. Brown Mfg. Co.*, 45 Ill.2d 418, 261 N.E.2d 305, because said Count II (being the count on strict products liability) did not contain an allegation that the plaintiff was free from contributory negligence when he was injured. After the notice of appeal herein was filed, the opinion in the *Williams* case was revised by the Supreme Court so that the necessity of such an allegation was eliminated. The plaintiff, however, had filed no cross-appeal regarding the action of the trial court in striking Count II, but a majority of this Court upon motion under Supreme Court Rule 366(a)(5) has reinstated Count II of the amended complaint.

The negligence count in the plaintiff's amended complaint in essence made five charges of negligence. Two of the charges were in regard

to the use of a cotter pin with protrusions to connect a power take off shaft to the universal joint in the elevator rather than the use of keys or screws to eliminate such protrusions. A charge was made alleging a failure to design an elevator so as to employ a shield over the universal joint and shafting or, as such was discussed in the arguments, a shield that would be an integral part of the elevator. A charge of negligently manufacturing an elevator with no guard over the universal joint, and a charge of failure to attach warning labels to warn of imminent danger are also made.

The pertinent facts needed to be considered for this opinion are as follows: The plaintiff, who was 12 years old at the time of the occurrence, lost his right leg when it became caught or entangled in the spinning power shaft of the elevator in question. The plaintiff had worked from time to time, and on the day of the occurrence, for one Lawrence Jansen who was a farmer and a neighbor of the plaintiff. The elevator involved was about two years old and had been purchased new by Lawrence Jansen from one Elmer Kehrer, who sold the defendant's products at his farm supply business. The parts used to make up the elevator had here had been purchased by Kehrer from the defendant and were kept on hand for assembly of such an elevator. When Kehrer sold an elevator it was assembled by him, using the parts from his stock that would comply with the customer's needs or requests. Parts kept by Kehrer and available for assembly into elevators included 8-foot conveyor sections which could be bolted together for the conveyor length wanted, corn dumps for the end, downspouts and head sections. Regarding the power source for the conveyor parts, the purchaser could select either a mount for a motor, or an attachment for a power take-off from a standing tractor or other motor. As regards the elevator involved here, Lawrence Jansen ordered same to be 40 feet long and chose the power take-off attachment for its power source. Also among the parts supplied by the defendant manufacturer and had on hand for sale by Kehrer for the assembly of such elevators, but not purchased by Lawrence Jansen, was a shield or guard that was made to be fastened on to the elevator and cover the exposed universal joint, cotter pin and power shaft when a power take-off was to be the power source. If a mounted motor was to be the power source, the mount to set the motor on would occupy the area where the power take-off attachment would be connected to the elevator. According to the record, on the day in question the elevator was set up and operating as follows: It was about 40 feet long running from the ground to a barn loft, and was motivated by a square telescoping shaft (referred to as a tumbling rod) which in turn got its power from a tractor with a power take-off that was placed

at a right angle to the lower end of the elevator with the shaft or tumbling rod extending out from the rear of the tractor to a universal joint which conveyed the power to the elevator. The universal joint was connected to the elevator shaft by a cotter pin about two inches long, which was inserted through holes in the ends of each of them. The ends of the cotter pin protruded beyond the holes of the connection and were spread and folded around the same. The cotter pin retained the power shaft and also acted as a shear pin. The machine was so designed that when in operation, the shaft would rotate at 540 revolutions per minute. There was nothing in evidence that would indicate, nor is it contended, that the elevator was not operating properly at the time in question. No one saw the occurrence nor could testify just how the plaintiff became entangled in the power shaft or universal joint.

The plaintiff testified that just prior to the occurrence he had started the tractor that furnished the power to the elevator and had gotten off of that tractor and started to walk and doesn't remember anything further until he was lying on the ground with his leg caught in the elevator. The only other person in the vicinity was Robert Jansen, aged 20, who testified that he noticed the plaintiff on the elevator in a crawling position and off balance with his hands on each side of the elevator about 3 feet from the bottom and with his right foot in the floor of the conveyor part of the elevator and his left foot on the edge of the elevator nearest the power take-off shaft, with no part of plaintiff's clothing or body touching the power take-off shaft or universal joint. The witness further testified that he ran to shut off the tractor supplying the power to the elevator and while doing so heard the plaintiff scream, and when he looked he saw the plaintiff's right leg around the square power take-off shaft and plaintiff's body and shoulder was on the ground under the elevator. Another witness who had been called to help testified that the plaintiff was in the universal joint and that part of his foot was around the shaft. There was no evidence that would indicate, nor did any expert witness or farm safety standards indicate, that had the power take-off guard or shield provided by the defendant been used it would not have protected against the injury to the plaintiff. One expert witness did testify that a stub shield to cover an exposed area where the end of the shield abutted the side of the elevator would have given more protection from the exposed cotter pin and universal joint. However, photographs of a model of the elevator in question with the shield provided by the defendant in place shows that the space between the end of the shield and the elevator is relatively very small. The evidence also showed that the end of the shield provided by the defendant would be hung on a hanger that was to be bolted to the elevator. Necessarily, this space

or gap must have been so minimal a boy's foot or clothing could hardly have come into contact with the universal joint or the protruding cotter pin from above. Even if plaintiff's foot or clothing could have done so, the evidence does not show that the plaintiff first became entangled with the cotter pin area that would have been totally protected by a stub shield (as by that expert's testimony). On the contrary, the only evidence was Robert Jansen's testimony recited above that plaintiff first became entangled with the square tumbling rod. The full length of the tumbling rod would have been covered from above by the shield that was provided by the defendant.

■■ The cornerstone of plaintiff's case, whether it be on the negligence count (Count I), or the reinstated strict liability count (Count II), is the existence of a defective condition in the elevator at the time it left defendant's control. The plaintiff has the burden of proving such. (*Suvada v. White Motor Co.*, 32 Ill.2d 612, 623, 210 N.E.2d 182, *Williams v. Brown Mfg. Co.*, 45 Ill.2d 418, at 432, 261 N.E.2d 305.) Accordingly, the first matter to be determined is when did the elevator in question come into existence. As the elevator was assembled by Kehrer, the machine could not have been said to have existed while the various parts thereof were in stock at Kehrer's. The ultimate makeup from the possible combinations of the components was not decided upon until after Lawrence Jansen came to Kehrer to purchase an elevator. The part of the machine that we are concerned with here, or the part that is alleged to be the dangerous defect therein, is the unshielded power take-off attachment. It was not determined that the machine would have such a power take-off (as distinguished from a mounted motor) until decided by and so ordered by Lawrence Jansen. Accordingly, the machine did not exist nor the alleged dangerous defect (*i.e.*, the power take-off attachment without the shield) could not have become a part of the machine until it had been assembled, which was not while it was in the defendant's control. The plaintiff failed to establish this basic element of his case. As to plaintiff's allegation that the defendant manufactured the elevator with no guard over the universal joint, in view of the facts above recited, as the elevator was assembled from the stock of parts kept on hand by Kehrer which included a guard, it would seem just as reasonable to contend that the defendant manufactured the elevator with a guard over the universal joint as not. The evidence shows that Kehrer knew of the importance of attaching the shield if the power take-off alternative were chosen as the power source. The defendant had no control over Kehrer or Kehrer's method of the assembly and sale of the elevator without attaching the shield.

■■ In regard to the plaintiff's charge that the defendant negligently

designed a machine with an ineffective guard over the cotter pin and universal joint area, even if such negligence were assumed, the plaintiff fails to show proximate cause. As is noted above, there was no evidence to show or indicate that had the shield the defendant did provide been used, such would not have protected the plaintiff from this injury. The plaintiff, however, contends that the defendant should be liable because it was negligent in that it designed a machine that could be assembled and marketed without a shield over the exposed tumbling rod and universal joint, and that this injury to the plaintiff would not have occurred if the exposed parts in question had been covered by a shield that was an integral and non-detachable part of the machine. This, in effect, is contending that the defendant was under the duty to produce a foolproof machine that would be accident proof. The law is not such, nor is there any such duty on a manufacturer. See *Warner v. Kewanee* (6th Cir. 1969), 411 F.2d 1060, having to do with a 12-year-old injured on a conveyor very similar to one here, and see also *Van Dorpe v. Koyker Farm Imp.Co.* (7th Cir. 1970), 427 F.2d 91, having to do with a person who was injured when he fell, causing his hand to come into contact with the open end of a grain auger; where the court approved an instruction in regard to the machine that the manufacturer was not an insurer nor was it under a duty to manufacture a grain auger that was "accident proof". Also, *Neusus v. Sponholtz* (7th Cir. 1966), 369 F.2d 259, and *American Law of Products Liability*, Vol. I, page 240. To adopt the plaintiff's contention, proximate cause would be eliminated, and liability could be based on showing that an injury could have been prevented by other safeguards no matter how impractical or fanciful. On this point, for instance, the president of the defendant company stated that farmers had fifteen different makes of tumbling rods; that sometimes the farmer would not buy the one offered with the elevator, and that the telescoping shield that was offered was designed to fit all of the tractors that were available at the time.

■■ In order to show negligence in the design and the supplying of the parts to be made into the machine, it is contended that defendant was negligent in failure to attach warning labels to the machine to warn of imminent danger. Assuming that a manufacturer was under a duty to warn against such an open and obvious danger as the whirling tumbling rod had here, we again come to the question of proximate cause. The evidence shows that the plaintiff had been instructed by Lawrence Jansen to be careful in regard to the use of the farm equipment, and that the plaintiff had worked around the power take-off, shaft and universal joint assembly before the day of the occurrence. The evidence further is that only a short time before the occurrence the plaintiff

actually was warned away from the elevator by the aforementioned Robert Jansen, and did move away from the machine. In face of this warning, Robert Jansen next saw the plaintiff on the elevator as recited above riding with one foot in the conveyor part. Here again the plaintiff has failed to prove that the lack of a warning label (if such were indeed to be required here) was the proximate cause of his injury. Such a label would be superfluous in face of the actual verbal warning given here and then heeded and later ignored by the plaintiff. In *Vroman v. Sears Roebuck & Co.* (6th Cir. 1967), 387 F.2d 732, 735, it was held that the failure to warn of danger of projection of foreign objects from the discharge chute of a power lawn mower was not the proximate cause of the injuries to a 7 year old boy where it was shown that the boy had preexisting knowledge of such danger from having been instructed by older relatives in the use of the mower. In *District of Columbia v. Moulton*, 182 U.S. 576, 21 S.Ct. 840, it was held that "no one needs notice of what he already knows".

The dangerous or defective condition complained of here arose not from the machine as produced by the defendant, but rather from the assembly of the elevator by Kehrer upon the order of Lawrence Jansen, which order did not include the safety guard or the shield that was provided by the defendant. The plaintiff, having failed to prove that the shield so provided by the defendant was inadequate for the protection required here, it cannot be here held that the defendant is guilty of negligently designing an unreasonably dangerous elevator. This does not necessarily mean that the plaintiff would be without recourse for his injuries. A similar situation existed in *Schipper v. Levitt & Sons, Inc.*, 44 N.J. 70, 207 A.2d 314, where a manufacturer of a gas fired boiler was absolved of liability for both negligence and warranty and strict liability for the scalding of an infant using a bathroom washstand. The manufacturer (York) did not assemble or install the heating unit, but simply sold units to the purchaser's (Levitt's) specifications. The court found that the defect arose from the installation which did not include a mixing valve, or tempering device at the boiler as recommended by the manufacturer, York. Levitt, the assembler seller-contractor relied instead, on combination spigots supplemented by inadequate instructions to the customers. The court observed that the heating units were not defective when they were delivered to Levitt and functioned strictly as they were intended, and held that the manufacturer, York, properly relied upon the contractor to complete an otherwise incomplete heating unit. A judgment was allowed to stand against Levitt. This line of cases is to be distinguished from those cases that hold a manufacturer of an automobile liable under strict liability where the retail dealer

thereof failed to make adjustments agreed upon by him and the manufacturer that would have corrected the dangerous condition, *Vandermark v. Ford Motor Co.*, 61 Cal.2d 256, 391 P.2d 168, and is also distinguished from those cases that hold liable the producers of a defective component part of an assembled product such as in *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182, or the furnisher of tainted food to be processed by another. Recourse must be restricted to the one or ones responsible for the defect and not necessarily any one in the line. It is as stated in the above mentioned *Schipper* case, 44 N.J. 70, 207 A.2d 314, where responsibility was affixed to Levitt, the assembler, under those circumstances. At page 330 of that opinion, the court said:

"In the developing steps towards higher consumer and user protection through higher trade morality and responsibility, the law should view trade relations realistically rather than mythically. Thus viewed, it is difficult to see how York could reasonably have been expected to do anything other than fill Levitt's purchase order while expressing its recommendation in clear and strong terms as it did. Conceivably it might have refused to sell its heating units unless Levitt also purchased the valves but then Levitt could readily have purchased comparable heating units without valves from other manufacturers. And even if Levitt had purchased the valves from York, there was nothing York could do to compel their attachment or to prevent Levitt from pursuing its own chosen design and mode of installation. All in all, it would appear evident that York had not acted unreasonably, that no defaulting action on its part had proximately caused the injuries, and that no just purpose would be served by affixing responsibility to it in addition to Levitt for the injuries allegedly resulting from Levitt's defective design and installation."

In view of the foregoing, the judgment against the defendant will be set aside. The order denying defendant's post-trial motion for judgment *n.o.v.* as to Count I of the amended complaint is reversed. As to Count II, upon the reinstatement under Supreme Court Rule 366 (a) (5), such count should be regarded as having been considered by the trial court without regard to the original opinion in *Williams v. Brown Mfg. Co.*, *supra*. As indicated hereinabove, the judgment as to Count II should not stand. Accordingly, the order of the trial court in allowing defendant's motion for judgment *n.o.v.* as to Count II is affirmed.

Affirmed in part and reversed in part.

Mr. PRESIDING JUSTICE TRAPP specially concurring:

Upon the issues raised under Count II in products liability, it is suggested that the facts here bring this case within the ambit of the view

expressed in my special concurrence in *Lewis v. Stran Steel Corp.*, 6 Ill. App.3d 142, 285 N.E.2d 631. Here, Jansen purchased the equipment and operated it for some two years without any form of shield or guard on the tumbling rod or its connections. It strains reasonable credulity to assert that the purchaser was unaware of the potential hazard. This is so whether or not there exists a conflict of testimony as to whether Kehrer urged that Jansen purchase the protective devices. In the essence of definition, the facts do not establish a case of products liability within the scope of the Restatement of Torts, 2d, par. 402A. I also concur in the views expressed in the principal opinion.

Mr. JUSTICE CRAVEN dissenting:

Upon reinstatement of the products liability count, this appeal involves both negligence and products liability. The general verdict of the jury, returned pursuant to instructions relating thereto given at the behest of the defendant, is sufficient to sustain the judgment on both counts.

The majority opinion seems to hold that the judgment on the negligence count cannot be affirmed because the negligence of the defendant, even if it is established by the evidence, was not the proximate cause of the plaintiff's injury. As I view this record, that issue was properly submitted to and resolved by the jury.

I read the majority opinion to at least imply that the plaintiff was guilty of contributory negligence as a matter of law. In any event, one of the main contentions of the defendant in this appeal is to the effect that the plaintiff, 12 years old at the time of the occurrence, was guilty of contributory negligence as a matter of law. This is premised upon the assertion that the danger from this machinery was patent and that the minor plaintiff was equally chargeable with the knowledge of the danger. Such knowledge is said to constitute contributory negligence as a matter of law. The Illinois Supreme Court disposed of such contention with finality when it said: "The law is clearly established by the great weight of authority that between the ages of seven and fourteen the question of culpability of a child is an open question of fact and must be left to the jury to determine, taking into consideration the age, capacity, intelligence and experience of the child." *Maskaliunas v. Chicago & Western Indiana R.R. Co.*, 318 Ill. 142, 149 N.E. 23, and quoted with approval in *Dickeson v. Baltimore & Ohio Chicago Terminal R.R. Co,*. 42 Ill.2d 103, 245 N.E.2d 762.

The majority opinion exonerates the defendant from liability under the products liability count upon the theory that there was no product, or if there was a product, it was a product with a shield by reason of the availability of the shield as a component part of the machine shipped

by the manufacturer to the retailer. The concurring opinion seems to state that even if there was a product, the defect in the product was patent and the knowledge of the user of the defective condition insulates the manufacturer from liability to the plaintiff. I cannot concur.

The fact that the machinery here involved was broken down and shipped as component parts to the dealer does not preclude the existence of a defective product. A manufacturer cannot escape liability for defective products by shipping component parts. Such would make for easy circumvention of the policy and philosophy underlying responsibility in product cases.

The fact that the dealer subsequently assembled the parts within certain limited variables in order to satisfy the purchaser's specific order is of no consequence. This record shows us that the variables relate only to the length of the conveyor and the motor assembly if one was desired, or power take-off equipment if that was desired. The fact that the manufacturer supplied the dealer with a detached shield as "standard equipment" but at extra cost seems irrelevant. The evidence in this case is that a shield as an integral part of the machinery would have kept this machine from being unreasonably dangerous. The expert testimony is to that effect. It is my understanding that the duty of the manufacturer is to place into the stream of commerce only those articles which are not unreasonably dangerous when used for their intended purpose. (*Rivera v. Rockford Machine & Tool Co.*, 1 Ill.App.3d 641, 274 N.E.2d 828.) As the court observed in *Rivera:* "* * * Resolution of the question of whether defendant's machine was unreasonably dangerous for failure to incorporate certain safety devices which plaintiff's evidence shows were available at the time the Hijector left defendant's control was the function of the jury as the trier of fact. Their finding as to this question, when considered in connection with defendant's duty, determines the issue of liability. *Evans v. General Motors Corp.* 359 F.2d 822, * * *".

The notion expressed in the concurring opinion that the knowledge of the user precludes the manufacturer's liability to the plaintiff in this case, whether considered a non-user, a bystander, or in some other category, has been discussed in the concurring and dissenting opinions in *Lewis v. Stran Steel Corp.*, 6 Ill.App.3d 142, 285 N.E.2d 631. Such is also discussed in *Mieher v. Brown*, 3 Ill.App.3d 802, 278 N.E.2d 869, leave to appeal in that case having been granted by the Supreme Court on May 23, 1972.

As I view this record, the judgment of the circuit court of Coles County should be affirmed.