Jᴇʀʀʏ R. Pʏᴀᴛᴛ, Plaintiff-Appellant, *v.* Eɴɢᴇʟ Eǫᴜɪᴘᴍᴇɴᴛ, Iɴᴄ.,
Defendant-Appellee.

(No. 73-137;

Third District—March 26, 1974.

*Rehearing denied April 23, 1974.*

Law Offices of Robert C. Strodel, Assoc., of Peoria (Arthur R. Kingery
and Robert C. Strodel, of counsel), for appellant.

William L. Voelker, Jr., of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This products-liability action was brought by plaintiff-appellant, Jerry
Pyatt, in the circuit court of Peoria County against defendant-appellee,
Engel Equipment, Inc. In the complaint based upon a theory of strict
liability in tort, plaintiff seeks damages for personal injuries against the
manufacturer of a sheet metal press brake. The trial court entered judg-
ment upon a jury verdict in favor of defendant. Plaintiff appeals.

The machine in question is a Bendal 1010 BA press brake manu-
factured by defendant and is used to bend sheet metal for use in the
heating and cooling industry. It consists of two dies, one attached to a

movable ram which comes together with a fixed die. The widest opening between the two dies is 2 inches and the machine was not equipped with a guard or a safety device around the working surface.

Plaintiff is an apprentice sheet metal worker employed by Meister Bros. in Peoria, Illinois. The incident giving rise to this action occurred 2 days after he commenced employment. Having no prior experience in the use of the machine, plaintiff was instructed by his foreman on the operation of the machine. Plaintiff testified that after a demonstration of the machine he was aware that injury would occur if his hand were placed in the area of the ram and die. Immediately following this consultation plaintiff began operating the machine and while holding the metal being bent by the press brake, four of the fingers on his left hand were severed when they were inserted between the ram and die.

According to the complaint, the machine was defectively designed and unreasonably dangerous for the purpose and use intended in that it was not equipped with guards or other safety devices nor was there a visible written warning of danger for operators of the machine. Defendant filed an answer and an affirmative defense of assumption of risk.

During the trial, the court refused to allow plaintiff to question witnesses about the Health and Safety Rules of the Industrial Commission of the State of Illinois. The first reference to the Health and Safety Rules was made during the examination of Walter Alan Reed, design engineer for the defendant, called as an adverse witness under section 60. After describing the nature and operation of the brake, the witness indicated the machine as so designed was similar to that of competitive manufacturers, which like the machine in question did not include any particular safety devices in the working area where the dies came together. The witness was then asked whether he was familiar with the Health and Safety Rules of the State of Illinois and although he answered "No", an objection to the question was interposed and sustained after which both the question and answer were stricken. Later plaintiff sought to question his own expert witness as to his familiarity with the Health and Safety Rules. The court refused to allow any reference to or identification of the Health and Safety Rules as such, although the expert was allowed to testify regarding his knowledge of the substance of the rules without their identification. It is plaintiff's contention that these rules are admissible into evidence for the limited purpose of establishing some evidence of standards of machine design. Defendant, on the other hand, in arguing the rules are not admissible, maintains that the Health and Safety Rules promulgated by the Industrial Commission impose standards for employers within the State of Illinois and apply only to an employer-employee relationship, but they do not establish rules for out-of-state

manufacturers of the machines. The same reasoning was adopted by the trial court. It is our opinion the court erred in its refusal to allow introduction of the rules into evidence.

With respect to problems involving the Health and Safety Rules, the parties have directed our attention to three cases. The first of these cases in point of time, relied upon by the appellee, is *Jones v. S. S. and E. Corp.*, 112 Ill.App.2d 79, 250 N.E.2d 829. In *Jones* the court held improper an instruction given in a Structural Work Act case which in effect directed the jury to consider a violation of the Health and Safety Rules as a violation of the Structural Work Act. Although the court believed the instruction was erroneous and prejudicial, it did not hold the rules were inadmissible.

In *Avery v. Moews Seed Corn Co.*, 131 Ill.App.2d 842, 268 N.E.2d 561, the second case cited by the parties, the court found no error where the Health and Safety Rules were read into evidence to establish a standard of care where an employer-employee relationship did not exist. The Health and Safety Rules were deemed relevant and admissible where the plaintiff was an independent truck driver who was injured when he delivered corn to defendant's plant.

The third case, cited by the appellant, *Clements v. Schless Construction Co., Inc.*, 8 Ill.App.3d 291, 290 N.E.2d 21, adopts the holding in the *Avery* case and holds the Health and Safety Rules admissible as standards in determining liability under the Structural Work Act. In so doing the court believed its rule harmonious with the earlier *Jones* case where the court abstained from considering such questions, believing it not sufficiently discussed in the briefs. Again in *Clements* as in *Avery*, introduction of the Health and Safety Rules was permitted even though the relationship of employer-employee did not exist.

■■ An expert witness testifying in behalf of the plaintiff was finally permitted to describe the standards set forth in the Health and Safety Rules but was prohibited from identifying the source of such standards or indicating they had been adopted by the Industrial Commission pursuant to the authorization of the Health and Safety Act (Ill. Rev. Stat. 1971, ch. 48, par. 137.1 *et seq.*). The appellee suggests that whatever prejudice might have ensued because of any error in the admission of the Health and Safety Rules was cured by this course of action. We do not share this view, since it would be of substantial relevance in evaluating a standard to know the source of the standard as distinguished from the opinion of a single expert. That the expert did describe the standard without identification of its source without claim of error would seem to establish the relevancy of the standards as described in the rules as

applied to the design of the machine. If the machine was in accord with standards disclosed by the Health and Safety Rules, no doubt the appellee would be contending the rules and the authority under which they were propounded would be admissible to show the propriety of its machinery and indeed we believe the rules should be admitted for such purpose. Such rules do not and ought not have the force of a statute and we believe the standards contained in such rules may be the subject of dispute or refutation by either party. From what we have said, it also follows that we believe exclusion of the Health and Safety Rules as such was prejudicial and requires a new trial.

This brings us to the assignments of error relating to rulings by the trial court on instructions. The trial court gave a burden of proof instruction in the language of *Suvada* which of course referred to an "unreasonably dangerous" condition. Each party tendered an instruction purporting to define this phrase and each party objected to the other's instruction. The court was unwilling to accept either proffered instruction and finally gave an instruction of its own. This instruction which is identified as a court's instruction provides:

> "When I use the term 'unreasonably dangerous' in these instructions, I mean that the product at the time it left the manufacturer's control must have been dangerous to the extent beyond that which would be contemplated by the ordinary user of it, with ordinary knowledge common to the community in which it was to be used. The law does not say what conditions are unreasonably dangerous. That is for you to decide."

The defendant's instruction which the court declined to give was similar to the one finally given. The defendant's instruction did not include the last two sentences of the court's instruction which appear to have been taken from the plaintiff's instruction. The plaintiff's instruction provided:

> "When I use the term 'unreasonably dangerous' in these instructions, I mean that a product is unreasonably dangerous if it is not reasonably safe for such purpose or uses as could be expected to be made of it. The law does not say what conditions are unreasonably dangerous. That is for you to decide."

In *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182, our Illinois Supreme Court in formulating a products liability rule refers with approval to Restatement (Second) of Torts, section 402A. Comment i to section 402A includes the statement that: "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary

knowledge common to the community as to its characteristics." The gist of this comment is the basis for defendant's instruction and the one finally given by the court.

It is conceded there are no pattern jury instructions recommended for use in products-liability cases; nor for that matter have the few products-liability cases decided in recent years involved instructions relating to this aspect of a products liability case. The general complaint of the plaintiff to the instruction as given is that by defining "unreasonably dangerous" in terms of ordinary user and ordinary knowledge, the instruction is importing into the case terms similar or equivalent to the reasonable man standard which the *Suvada* rule was designed to eliminate. In particular, as applied to the facts of the instant case, the plaintiff claims that requiring danger greater than that associated with ordinary user or ordinary knowledge in effect eliminates any consideration of his theory of the case. If, as the plaintiff testified, he knew that if he put his fingers in between the ram and the die they would be injured, then under the definition proposed in the instruction, no recovery was possible. However, it was plaintiff's theory that the machine was unreasonably dangerous because it failed to include any safety device which would have reduced or eliminated the risk of injury incident to the use of the machine.

The only support for the definition in the instruction is comment i to section 402A of the Restatement and no case is cited by either party either approving the definition as given or holding that a definition of the term "unreasonably dangerous" is either required or desirable. Indeed the cases which discuss unreasonably dangerous products do not do so in the language of comment i. Also, it should be noted the definition or statement in comment i does not purport to be a general definition of "unreasonably dangerous" but rather is intended to suggest that not all injuries resulting from the use of a product automatically subject the manufacturer to liability. (See, Prosser, *Strict Liability to the Consumer in California* (1966), 18 Hastings L.J. 9.)

■■ The general rule is that terms not having a special technical or legal meaning need not be defined in instructions. (I.L.P. *Trial*, section 176.) After reviewing the numerous cases which have had occasion to discuss the essential elements in a products liability case, it is our conclusion the term "unreasonably dangerous" requires no definition. It is a term of both sufficient generality and particularity to be easily and commonly understood. The attorneys believe that a definition is required by analogy to negligence law where the term negligence is usually defined in accord with Illinois Pattern Instruction 10.01. We do not believe the analogy is persuasive since a review of the negligence instruction

indicates that the term is defined by language not further defined similar to the term in question, *i.e.*, reasonably careful person. Also, see Illinois Pattern Instructions, Criminal 2.05, where the comment indicates that even in a criminal case a definition of "reasonable doubt" is not appropriate.

*Cronin v. J.B.E. Olson Corp.*, 104 Cal. Rptr. 433, 501 P.2d 1153, the only cases called to our attention which discusses comment i of section 402A of the Restatement, supports our view the definition as given is evocative of the connotation that the reference to "ordinary user" and "ordinary knowledge" continues vestiges of the reasonable man or negligence standard. The court in the *Cronin* case adopted "defect" as the proper description of the basis of a manufacturer's liability rather than the term "unreasonably dangerous", believing the latter term also suggestive of negligence. It would appear that in either case the use of the term in an instruction without further definition would be appropriate.

■■ Finally, we consider plaintiff's objections to the trial court's rulings on defendant's assertion of an affirmative defense of assumption of the risk. Plaintiff's objections are twofold: first, defendant's pleading of the affirmative defense was insufficient to set forth a defense in a products liability case as a matter of law; second, the instruction given by the court over plaintiff's objection does not correctly state the law applicable, and consequently giving the instruction was prejudicial. Since the instruction complained of is a burden-of-proof instruction substantially embodying the elements of the affirmative defense as pleaded, it follows that because, as we shall hereafter show, the giving of the instruction was erroneous, the pleading likewise failed to set forth a proper defense and should have been stricken pursuant to plaintiff's motion.

The instruction complained of is defendant's instruction No. 5B, the defendant's burden of proof instruction on its affirmative defense of assumption of the risk. The instruction provides:

"The defendant has raised the affirmative defense that the plaintiff assumed the risks of injury from the dangers which the plaintiff contends caused his injury. To prove that defense the defendant has the burden of proving each of the following propositions:

First, the the plaintiff participated in activities which exposed him to the risk of the injury of which he has complained.

Second, that the dangers involved were the dangers which ordinarily accompany the activities.

Third, that the plaintiff knew, understood, and appreciated these dangers, realized the possibility of injury from them, and proceeded voluntarily.

Fourth, that one or more of these dangers was the cause of plaintiff's injuries and damages.

If you decide that each of these propositions has been proved, then your verdict should be for the defendant. If, on the other hand, you decide that any of these propositions has not been proved, then the defendant has not proved the affirmative defense of assumption of risk."

This instruction concededly is I.P.I. 13.01 as modified.

In *Sweeney v. Max A. R. Matthews & Co.*, 46 Ill.2d 64, 264 N.E.2d 170, the court affirmed the trial court's ruling refusing to give defendant's assumption of the risk instruction based on a modification of Illinois Pattern Instructions 13.01 and 13.02. As the court pointed out in *Sweeney;* if the dangers were only ordinary, these were not the dangers which the plaintiff claimed and was required to prove caused his injury, *i.e.*, an unreasonably dangerous condition. In *Williams v. Brown Manufacturing Co.*, 45 Ill.2d 418, 261 N.E.2d 305, the earliest case in which the supreme court has considered the culpable conduct of the plaintiff which may be a basis of the assumption of risk defense, the court appears to consider the principle described in comment n to section 402A of the Restatement of Torts as embodying the general principle applicable to his defense. (See the observation in Annot., 46 A.L.R.3d 246, discussing comment n.) Section 496D furnishes the background for considering the applicability of this defense.

Although this case was tried subsequent to the decision in the *Sweeney* case, it does not appear from the record that the decision was considered either by the attorneys or by the court at the time the instruction was ruled on. The only case referred to as apparently supporting the instruction given was *Lewis v. Stran-Steel Corp.*, 6 Ill.App.3d 142, 285 N.E.2d 631, but a review of that case does not indicate any support for applying the traditional rules of the assumption of the risk defense represented by the I.P.I. instruction to products-liability cases.

For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed and remanded with directions that plaintiff be granted a new trial.

Reversed and remanded with directions.

SCOTT, P. J., and DIXON, J., concur.